# AMERICAN RAILROAD COMPANY OF PORTO RICO *v.* BIRCH.

## ERROR TO THE DISTRICT·COURT OF THE UNITED STATES FOR PORTO RICO.

No. 224.  ·Submitted April 24, 1912.—Decided May 13, 1912.

The Employers' Liability Act of 1908 expressly applies to, and is in force in, Porto Rico; but *quære*, and not necessary to decide in this case, whether the Safety Appliance Acts apply to, or are in force in, Porto Rico.

Where words of a statute are clear, they must be strictly followed, even if the construction causes apparently unnecessary inconvenience.

Where the purpose of Congress is clear, the courts must yield to such purpose, and assume that all contending considerations were taken into account by Congress.

The National Employers' Liability Act of 1908 gives the right of recovery to the personal representatives and not to the heirs of one killed by the negligence of the employer, and the heirs cannot maintain an action even where the local statute, as in Porto Rico, gives a right to the heirs as well as to the personal representatives to maintain such an action.

A defendant company has the right under the Employers' Liability Act of 1908 to have its liability determined in one action.

5 Porto Rico Fed. Rep. 273, reversed.

THE facts, which involve the construction of the Employers' Liability Act of 1908 and, its application to Porto Rico, are stated in the opinion.

*Mr. N. B. K. Pettingill* and *Mr. F. L. Cornwell* for plaintiff in error:

Although the judgment below was for less than $5,000, this court has jurisdiction under § 35 of the Foraker Act.

The present.case·comes under both subdivisions of the section.  If it came from the Supreme Court of one of

the Territories the writ would lie, because the jurisdiction
of the court below did not depend upon the character
of the parties but upon the character of the cause of action
as arising under an act of Congress (the Employers'
Liability Act of April 22, 1908). *Royal Ins. Co.* v. *Martin*,
192 U. S. 149, 159.

As plaintiff's claim was based upon an act of Congress
and as defendant contended that plaintiff was not the
party authorized by that act to sue and was overruled,
it claimed a right under a statute of the United States
which was denied. *Serrales* v. *Esbri*, 200 U. S. 103, 109.

The right of action is limited by the statute to the per-
sonal representative of deceased.

The plaintiff below alleges that she is the widow of the
deceased, that she and her son are his only heirs, and
demands the recovery in her character as widow. The
company distinctly raised the question of her right to
sue in that capacity under that statute. Thus the con-
struction of the provision of the statute above quoted
was directly challenged.

While the purpose of the statute is doubtless remedial
and it is to be given a liberal construction consistent
with its terms to effectuate that purpose, there is no
place for construction in the technical sense because of
the absence of ambiguity. *Hamilton* v. *Rathbone*, 175 U. S.
414, 419; *Dewey* v. *United States*, 178 U. S. 510, 521.

When suit was first begun neither letters of adminis-
tration nor a declaration of heirship had been obtained,
and the latter was obtained after the suit was begun and
admitted in evidence at the trial.

In selecting the personal representative instead of the
heirs of the deceased or the specified beneficiary as the
proper party to bring the suit, Congress probably intended
to mark the logical distinction between providing for the
survival of a cause of action existing in the injured party
up to the time of death and for the creation of a new cause

of action arising in the representative from the moment of death. *Midland R. R. Co.* v. *Fulgham,* 104 C. C. A. 151; *Walsh* v. *N. Y., N. H. & H. R. Co.,* 173 Fed. Rep. 494.

While there is no decision of any Federal court construing this very statute since its enactment, see as to similar statutes, *Lake Erie R. Co.* v. *Charman,* 161 Indiana, 95; *Louisville &c. Co.* v. *Trammel,* 93 Alabama, 350; *Cleveland &c. R. Co.* v. *Osgood,* 73 N. E. Rep. 285; *Peers* v. *Nevada W. Co.,* 119 Fed. Rep. 400.

The provision placed by Congress in the statute was not a new departure, but the adoption of a policy already fixed in the laws of several of the States, hence it is logical to presume Congress had in mind the construction given to these similar provisions of the state statutes. See *Illinois C. R. Co.* v. *Barron,* 5 Wall. 90; *Sou. Pac. Co.* v. *Tomlinson,* 163 U. S. 369; *Stewart* v. *B. & O. R. Co.,* 168 U. S. 445; *Chesapeake R. Co.* v. *Dixon,* 179 U. S. 131.

The Safety Appliance Acts of Congress have not been made applicable to Porto Rico, and the court below erred in directing the jury to make such application, and thereby deprived the company to that extent of the benefit of contributory negligence on the part of the deceased. See *New York* v. *Bingham,* 211 U. S. 468.

The instructions as to the measure of damages were erroneous.

*Mr. Willis Sweet* for defendants in error:

This court has no jurisdiction of this appeal. No right was denied defendant in the lower court. *Royal Ins. Co.* v. *Martin,* 192 U. S. 149, is not applicable.

The jurisdiction of the lower court depended upon diverse citizenship and the amount in controversy, and of this court on the amount in controversy.

*Serrales* v. *Esbri,* 200 U. S. 103, is not applicable; that case did not involve the right of the plaintiff in error under a United States statute.

The defendant in the case at bar has not been deprived of any right, and neither the Constitution, nor a treaty, nor a right of defendant. under any United States statute has been questioned. Plaintiffs had capacity to sue under the statute. The record shows that there was no estate of any kind. There was no need for plaintiffs to go through the farce of having an administrator appointed, when there was not one dollar in the world, real or personal, to be administered.

Even though the court erred in holding that the plaintiffs had "capacity to sue," it is not reversible error in this case in the absence of a right taken from defendant, and the judgment being under five thousand dollars. Whether or not the error, if error it was, would have been fatal had the judgment exceeded five thousand dollars need not be discussed.

The National Safety Appliance Act is in force in Porto Rico.

The act of 1908, under which this action was brought, has for its purpose, and for its exclusive purpose, the further protection of employés of railroad companies. If it did not refer to the Safety Appliance Act, what could have been the object of using it in this statute. It must have referred to the Safety Appliance Act, as appears from § 1 of the act of 1893. See 6 Fed. Stats. Ann. 752.

Obviously the purpose of this statute is the protection of the lives and limbs of men, and such statutes, when the words fairly permit, are so construed as to prevent the mischief and advance the remedy. *Chicago, M. & St. P. Ry. Co.* v. *Voelker*, 129 Fed. Rep. 522, 527.

It is obvious that the statute was so intended, because it says so.

The act of 1908 is very drastic in its terms. It does away entirely with the old principle of the common law that if the person injured was guilty of contributory negligence he could not recover at all, and that if the

jury find that the person injured or killed was guilty of contributory negligence he must, nevertheless, have judgment, the jury substracting from the full sum to which he would be entitled a sum "in proportion to the amount of negligence attributable to such employé."

Porto Rico is brought within the terms of the act by direct provision. And how can the act mean less than that the Safety Appliance Act is applicable in Porto Rico when Congress declares, in language as broad as could be employed, that under this act of 1908, contributory negligence shall not be permitted as a defense by any railroad company that has failed to adopt those appliances.

As to the measure of damages, a party will not receive consideration in the appellate court when the error complained of did not do him any injury.

MR. JUSTICE McKENNA delivered the opinion of the court.

Action for damages for the death, through the alleged negligence of plaintiff in error, of the husband and father of defendants in error, who are, respectively, deceased's widow and son.

The action was originally brought by Ann Elizabeth Birch. A demurrer was filed to the complaint, which was sustained in part, and the court directed counsel "to so amend the complaint as to show whether or not the plaintiff is the sole heir of the deceased, or if she sues for the benefit of certain other heirs, then the complaint must specifically state the name of said other heirs and state under what law the said action is brought."

An amended complaint was filed alleging that the deceased, Francisco Abraham Birch, was, when killed, at his post of duty as brakeman on a train of the railroad which was running through the city of Aguadilla at a high rate of speed and contrary to an ordinance of the city, in conse-

quence of which speed and a defect in one of the wheels of
the car the body of the car left the tracks and was thrown
to the ground, crushing the deceased beneath it and thus
causing instant death.

It is alleged that a proper inspection of the wheel would
have disclosed the defect in it, and, further, that if the
train had been running within the limits of the require-
ments of the law the train might and would have been
stopped before the accident occurred.

At the time of his death, it is alleged, that the deceased
was forty-seven years of age, was receiving $42 per month,
was a skilled and efficient railroad employé and was in
vigorous health and strength. And it is alleged that his
death was caused without negligence on his part and
while he was in the faithful discharge of his duty.

It is declared that the "action is based upon an act of
Congress entitled 'An Act relating to the Liability of
Common Carriers by Railroads to their employés in cer-
tain cases,' approved April 22, 1908."

It is alleged that Ernest Victor Birch was poor in health
and frail in body, and was dependent upon deceased for
support.

Damages were prayed at $10,000.

The railroad company denied the specific allegations
against it of speed and failure to inspect the wheels, al-
leged that they were inspected, and that no defects were
visible or could be ascertained. It also put in issue the
allegations of the complaint in regard to Ernest Victor
Birch.

The answer alleged that no administration proceedings
had been had on the estate of deceased, and that neither
of the plaintiffs has been declared his heir as required by
law. It is also alleged that Ernest Victor Birch was over
the age of twenty-one years, and that deceased was under
no legal obligation to support him.

The case was tried to a jury upon evidence conflicting

upon certain of the issues. There was no conflict as to the circumstances of the accident, the death of Birch in the line of duty, and that the accident was caused by a broken wheel, and that the train was not equipped with air brakes, but only with the ordinary hand brakes. There was conflict as to the speed of the train and as to whether the engineer in charge of the locomotive could see signals to stop or whether he disregarded them.

The instructions of the court, so far as material, will be noticed presently in considering the assignments of error.

These assignments are: (1) The court erred in overruling the demurrer; (2) in denying the motion to dismiss the action and direct verdict on the ground that it had not been brought by the personal representative of the deceased as required by the statute upon which it was based; (3) in holding that the heirs could sue in their own names; (4) in refusing to give the following: "That the court instruct the jury that the Federal act with regard to safety appliances has no application to the question at bar." And (5) in refusing to instruct the jury as follows:

"That they [the plaintiffs in action] are entitled to recover the actual compensation that they would have received if he [the deceased] had not been killed, and that would be limited to the purchase of an annuity for his recognized period of life."

These assignments are reducible to three propositions, to-wit: (1) the capacity of plaintiffs to sue, (2) the application of the safety appliance law, and (3) the measure of damages. Their discussion requires a consideration of the Employers' Liability Law, as the amended complaint is based on that law. Section 2 of the act provides as follows (35 Stat. 65, c. 149):

"That every common carrier by railroad in the Territories, the District of Columbia, the Panama Canal Zone, or other possessions of the United States shall be liable in damages to any person suffering injury while he is em-

ployed by such carrier in any of said jurisdictions, or, in
case of the death of such employé, to his or her personal
representative, for the benefit of the surviving widow or
husband and children of such employé; and, if none, then
of such employé's parents;  .  .  .   for such injury or death
resulting in whole or in part from the negligence of any of
the officers, agents, or employés of such carrier, or by
reason of any defect or insufficiency, due to its negligence,
in its cars, engines, appliances, machinery, track, roadbed,
works, boats, wharves, or other equipment."

Section 3 excludes the defense of contributory negligence,
but requires the damages to be "diminished by the jury
in proportion to the amount of negligence attributable to
such employé."   But provides that contributory negli-
gence is not to be attributable to the employé injured or
killed "where the violation by such common carrier of
any statute enacted for the safety of employés contributed
to the injury or death of such employé."   And by § 4
assumption of risk by the employé is also excluded in such
case.

Such part of the instructions of the court as are neces-
sary to be considered in connection with the act are, as
given by the court, in effect as follows:

(1) The action is brought under the Employers' Liabil-
ity Act of Congress of April 22, 1908, which is in force in
Porto Rico, the provisions of which are explained as set
out above.

(2) The damages can only be compensatory, and the
measure of them is what the plaintiffs or either of them
necessarily lose in or by the death of their husband and
father, and in measuring these damages the jury may take
into consideration the age, health and expectancy of life
of the deceased, his earning capacity, his character, his
mode of treatment of his family and the amount con-
tributed out of his wages to them for their support, and
calculate from these facts the amount the jury, as reason-

able and practical men, believe the plaintiffs lose because of the death. If the deceased was guilty of contributory negligence the damages should be diminished in proportion to such negligence, and if it be established by a preponderence of the evidence that the violation by the defendant of the law of Congress requiring safety appliances upon its trains and cars contributed to the death of the deceased, or was the proximate cause thereof, then the deceased cannot be held to have been guilty of contributory negligence nor to have assumed the risk, if the jury believe that the absence of safety appliances in and about the train contributed to or was the proximate cause of the injury.

The Employers' Liability Act expressly applies to Porto Rico. It is, however, contended that the Safety Appliance Act does not. To this contention appellees answer that it is made a part of the former act by the provision of § 3 of that act. "that no employé who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employés contributed to the injury or death of such employé." A similar provision is made in § 4 as to assumption of risk. These opposing contentions present a serious controversy. It is, however, really doubtful if they arise on the record. The charge in the complaint is that the deceased came to his death by being crushed under the body of a car upon which he was acting as brakeman, and that his death was "caused by the negligence of the defendant in failing to cause a proper inspection of the wheels." of the car, which "inspection would have discovered the unsafe condition of the wheel in question." As a further ground of negligence it was charged that the train was running at a high rate of speed; and that if it had been running within the speed "requirements of the law, the same might and would have been stopped

before the accident occurred." To these charges the testimony was directed to sustain or deny. The amount of testimony as to contributory negligence and assumption of risk we should not think was worthy of attention if the court and counsel had not considered an instruction was called for in regard to them, and, it may be, that the question is presented of the application of the Safety Appliance Act to Porto Rico. However, we are not called upon to decide it, as we find a fatal defect of parties.

In the original complaint defendant in error alleged that she was the widow of the deceased. To this a demurrer was filed alleging as a ground that the complaint did not "state in what capacity" she sued. Thereupon an amendment was directed and made, as we have indicated. In the amended complaint she joined with her Ernest Victor Birch, alleging him to be the son and herself the widow of the deceased. By agreement of the parties the demurrer to the original complaint was considered as a demurrer to the amended complaint, and as such it was overruled.

The record shows that at the trial the plaintiffs presented, against the objection of the company, a certificate from the proper insular court "in which it was certified that the plaintiffs in the action were the legal heirs of the deceased." Subsequently the court, in passing on and overruling a motion of the company for direction of a verdict for it upon the ground that the suit was not "brought by any person authorized under the national Employers' Liability Act to bring suit," said "that the suit being brought under the act of Congress of April 22, 1908, it is properly brought in the name of the only persons for whose benefit any recovery could be had, and it is the opinion of the court that the words used in section two of the act in question, 'to his or her personal representative,' cannot be construed to mean that it is necessary, in cases where only the husband or wife could inherit and are the only survivors, that they be forced, in the absence of any estate

belonging to the deceased other than his right to sue, to have an administrator appointed."

But the words of the act will not yield to such a liberal construction. They are too clear to be other than strictly followed. They give an action for damages to the person injured, or, "in case of his death, . . . to his or her personal representative." It is true that the recovery of the damages is not for the benefit of the estate of the deceased but for the benefit "of the surviving widow or husband and children."

But this distinction between the parties to sue and the parties to be benefited by the suit makes clear the purpose of Congress. To this purpose we must yield. Even if we could say, as we cannot, that it is not a better provision than to give the cause of action to those in relation to the deceased. In the present case it looks like a useless circumlocution to require an administration upon the deceased's estate, but in many cases it might be much the simpler plan and keep the controversy free from elements but those which relate to the cause of action. But we may presume that all contending considerations were taken into account and the purpose of Congress expressed in the language it used.

It is not denied that under the laws of Porto Rico there is a distinction between heirs and personal representatives. Indeed, defendant in error cites § 61 of the Code of Civil Procedure which recognizes the distinction. The section provides: "When the death of a person, not being a minor, is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death." And defendants in error urge that the National act should be construed to give a like alternative right to heirs or personal representatives, although its language is different. The purpose of the National act, it is argued, as of the Code of Civil Procedure of the Island, is to keep the action

alive and beneficently "to protect those dependent upon the employé as well as the employé himself," and that, therefore, "a 'personal representative'" might act in the place of the deceased. But it is further argued that this was not the only purpose of the act. It had the purpose of giving to a defendant company the right to have its liability determined in one action, and that such liability would be secured whether executors or administrators sued or heirs sued. The reasoning is not very satisfactory and puts out of account the absolute words of the statute. And these take a special force in Porto Rico. An employers' liability act existed there at the time of the enactment of the National act, which gave a cause of action, if the conditions of liability existed, to the widow of the deceased or to his children or dependent parents. The National act gives the right of action to personal representatives only.

*Judgment reversed without prejudice to such rights as the personal representatives may have.*